IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Darrell Gist | Crim. No. 4:02-cr-00207-TLW<br><br>**Order** |

This matter is before the Court on Defendant Darrell Gist's motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 125. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

On March 27, 2002, a federal grand jury returned a four count Indictment charging Defendant with carjacking and firearms offenses. ECF No. 2. On January 9, 2003, Defendant entered a guilty plea as to Counts 2 and 4 of the Indictment, both charging Brandishing a Firearm During and in Relation to a Crime of Violence. ECF Nos. 49, 51. On October 29, 2003, a sentencing hearing was held in which Defendant was sentenced to a term of imprisonment of 7 years as to Count 2 consecutive to 25 years as to Count 4, for a total aggregate sentence of 32 years imprisonment. ECF Nos. 58, 59. BOP records reflect that his projected release date is May 27, 2033.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides, in relevant part, as follows:

1

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But prior to the passage of the First Step Act, compassionate release motions could only be filed by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284

2

(quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

In Defendant's motion, he states that a sentence reduction is appropriate for three reasons: 1) the First Step Act's elimination of "stacking" sentences pursuant to § 924(c), 2) his underlying medical conditions and deteriorating health, and 3) the impact of COVID-19 while incarcerated. ECF No. 125 at 1. Specifically, he states that he "is an incomplete quadriplegic who suffers from cervical myelopathy, a debilitating progressive illness from which he will never recover…" *Id.* The motion states that Defendant "is wheelchair-bound 100% of his waking hours and his condition will only continue to get worse." ECF No. 124-1 at 2. The motion then outlines Defendant's physical limitations, the care and assistance he requires, and his decreased ability to provide self-care. It also states that he suffers from several other health conditions that place him at a high risk of COVID-19 complications: Type 2 diabetes, asthma, obesity, and Vitamin D deficiency. *Id.* at 10-11. Defendant attached sufficient medical records to verify his conditions. He argues that these circumstances present "extraordinary and compelling reasons."

The Government acknowledges the seriousness of Defendant's health condition and "assumes" that his medical issues satisfy the "extraordinary and compelling

3

reason" standard. ECF No. 135 at 12. Based on the Court's review of Defendant's medical records, and because the Government "assumes" that he satisfies the "extraordinary and compelling reason" standard, the Court finds that Defendant's health conditions present "extraordinary and compelling" circumstances. However, the Government states, and the Court notes that the full extent of Defendant's condition is subject to some dispute. One of his more recent records describes Defendant as "well-developed, well-nourished…and in no acute distress." ECF No. 125-3 at 2. It also states that Defendant's "muscle strength is 5/5 throughout the bilateral upper and lower extremities." *Id.* This assessment was done by an outside neurologist in November 2019. However, this Court does not deny that Defendant has serious medical circumstances based on the records submitted.

The Government opposes Defendant's motion, arguing that the Court should deny a sentence reduction because the § 3553(a) factors "strongly disfavor" release. ECF No. 135 at 11-14. In support of its argument, the Government cites to the seriousness of Defendant's federal offenses (the instant offenses) and his significant criminal history. *Id.* at 13. Defendant argues that the § 3553(a) factors weigh in favor of release for several reasons: he committed the offenses while struggling with drug addiction, he "devoted himself to self-improvement and rehabilitation over the course of his incarceration," he has received treatment and counselling for his substance abuse and anger management issues, he completed various education and skills courses, his lack of serious disciplinary issues while incarcerated, his thorough post-release plan and familial support, he has served over 17 years of his sentence, and

4

his "physical condition precludes any real possibility of violent behavior." ECF No. 124-1 at 15-20; ECF No. 136 at 7-10. Defendant's motion outlines his release plan to "embark on a new career as a paralegal" and live with his sister in Delaware where he asserts he will receive medical care and connect with supportive family. ECF No. 124-1 at 17. In sum, Defendant argues that release is warranted because of his health concerns, his physical condition, and his rehabilitative efforts while incarcerated.

In considering whether to reduce Defendant's sentence, the Court has carefully reviewed the Presentence Investigation Report (PSR) and has considered the statutory penalties, the Guidelines range, applicable caselaw and statutory law, all of the § 3553(a) factors and the balancing of those factors, and his post-sentencing conduct.[1] In light of those considerations, the Court concludes that while Defendant demonstrates "extraordinary and compelling" circumstances, he fails to establish that the § 3553(a) factors weigh in favor of release. The Court's reasons for reaching this conclusion include (1) Defendant's medical records that indicate treatment and care, (2) the seriousness and violent nature of the instant federal offenses, and (3) his criminal history that involves additional significant, violent conduct and demonstrates a continued disrespect for the law and safety of others.

---

[1] The Court has considered in its analysis each of the issues raised in Defendant's filings, including (1) his medical conditions independently and in light of COVID-19; (2) the First Step Act's elimination of § 924(c) "stacking"; (3) the way that the BOP is managing the pandemic and Defendant's health conditions; (4) his growth and rehabilitation efforts while incarcerated; (5) his lack of significant disciplinary issues while incarcerated; (6) the portion of his sentence served; and (7) his release plan, including living arrangements and medical care.

5

In balancing and analyzing the § 3553(a) factors, the Court has considered the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). This Court understands the health conditions Defendant faces, and the risk of COVID in light of his condition and incarceration. Those issues, and the current circumstances of Defendant's incarceration, have been considered in applying the following § 3553(a) factors.

I.   **The Instant Federal Offenses**

The Court begins with § 3553(a)(1)—"the nature and circumstances of the offense and the history and characteristics of the defendant." First, Paragraphs 8 through 16 of the PSR outline the offense conduct. Defendant was involved in two separate carjacking incidents during which he used firearms and threats to obtain control of the vehicles and the carjacking victims. PSR ¶¶ 8-12.

Significantly, the first carjacking victim was 16-years-old. The Defendant threatened to kill him after brandishing a firearm: "Gist pointed a handgun, described as a revolver, at [the victim], got into [his] vehicle, and told [him] to drive or he would kill [him]." PSR ¶ 9. Notably, Defendant did not simply take the vehicle, but at gun point, forced the 16-year-old victim to drive to another location under the threat of death. Defendant also committed this carjacking at a grocery store in broad day light (approximately 3:45 in the afternoon). PSR ¶ 9. The teenage victim was a venerable target. It is reasonable to conclude that the victim believed his life was in significant jeopardy.

The second carjacking victim, Tara Goff, was a mother with her two-year-old

6

daughter: "Gist pulled out a black revolver, pointed the weapon at Goff's face, and ordered her to get out of her vehicle." PSR ¶ 12. Ms. Goff's child was in the back seat of the vehicle, so she "pleaded to [Defendant] to let her get her daughter out" before the car was stolen. *Id.* The PSR does not indicate whether Defendant allowed her to do so, but states that Goff had to "quickly remove her daughter from the back seat" before a co-defendant drove away. *Id.* It is clear that this carjacking, which similarly occurred in broad daylight (2:55 in the afternoon) in a mall parking lot, was strategically planned to target another venerable victim—a mother and her two-year-old child.

Approximately one hour later, when authorities located and attempted to apprehend Defendant, he led them on a high-speed chase during which several police vehicles "sustained considerable damage" and "four officers were injured and taken to the hospital for treatment." PSR ¶ 14. Then, once Defendant was arrested and in custody, he provided false information to law enforcement, escaped, and was not recaptured until 7 months later in New Jersey. PSR ¶¶ 15, 16. Then, after Defendant was recaptured and after he pled guilty to the federal charges, he escaped from the local detention center by climbing over a wall and jumping the perimeter fence. PSR ¶ 16. He was recaptured within 2 hours. *Id.* His offense conduct was significant and violent, and he showed a total disregard for the safety of others. The Court concludes that the nature and circumstances of the offenses weigh heavily against release and a sentence reduction.

## II.  Defendant's History and Characteristics

The Defendant's criminal history is similarly violent and also weighs against a reduction in sentence and release. His criminal history involves additional firearm offenses and violent conduct. One previous offense is particularly egregious and is outlined in Paragraph 30 of the PSR: In 1993, Defendant was convicted of common law robbery, second degree kidnapping, and a crime against nature (forcible rape of his robbery and kidnapping victim). PSR ¶ 30. In connection with the offense, Defendant robbed his victim (Carole Griffin) "wherein he also threatened to use a handgun that endangered" her life. Then Defendant "feloniously kidnapped" Ms. Griffin by "unlawfully restraining her, confining her, and removing her from one place to another…for the purpose of facilitating a robbery with a dangerous weapon…She was sexually assaulted." The PSR's description of Count 3 (crime against nature) states that Defendant was charged with the "forcible rape of Carole [] Griffin." In sum, in committing these crimes against Ms. Griffin, Defendant robbed her, kidnapped her, and then forcibly raped her. Without question, the conduct outlined in connection with these charges was extremely violent—especially the "forcible rape." Notably, Defendant was sentenced to 20 years of imprisonment for those three 1993 convictions which were consolidated for judgment. PSR ¶ 30. However, being incarcerated for those offenses did not deter Defendant from committing the additional violent offenses that led to the federal charges. He was released to parole on April 21, 2001 and committed the instant offenses less than a year later in February and March 2002. *Id.* This conduct again demonstrates

Defendant's total disrespect for the law, the community, and the safety of others. Therefore, the Court concludes that § 3553(a)(1) weighs heavily against release.

### III. The Need for the Sentence Imposed

The Court concludes that §§ 3553(a)(2)(A)-(C) weigh against release for related reasons. The circumstances of the instant offense and Defendant's history and characteristics demonstrate his propensity to engage in criminal conduct and commit acts of violence. As for the need to "protect the public from further crimes of the Defendant," the Court acknowledges that his physical condition may diminish his ability to commit further violent crimes. However, this consideration does not outweigh the other factors—his conduct was egregious, and the sentence imposed was and is necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and to afford adequate deterrence. As to subsection (D)— "the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"—the Court notes that Defendant's filings and related medical records demonstrate that he has received treatment and care while incarcerated, and continues to be monitored and treated by the facility's medical personnel. The Court has also reviewed Defendant's most recent supplemental filing, ECF No. 139. The BOP has and will continue to evaluate Defendant's medical condition and provide appropriate treatment and placement. It is not clear nor certain to the Court that Defendant will have access to the same type of medical care, or the medical treatment outlined in Defendant's most recent filing, if released. Accordingly, the Court finds

9

that § 3553(a)(2)(D) also weighs against release.[2]

## IV. Available Sentences, the Sentencing Range, and Sentencing Disparities

The Court next turns to §§ 3553(a)(3)–(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Defendant plead guilty to two counts of Brandishing a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c). He pled guilty knowing those counts carried a statutory minimum sentence of 32 years (7-year statutory minimum on Count 2, with 25 years consecutive on Count 4). PSR ¶¶ 25, 26, 49. The Court imposed the statutory minimum sentence of 32 years when a Life sentence was available. ECF No. 59.

The Court acknowledges that the First Step Act has eliminated the "stacking" of sentences pursuant to § 924(c), and as a result, if Defendant had pled to the same two charges today, he would have been subject to a lower mandatory minimum. However, the Court notes that Congress explicitly did not make the First Step Act's change to § 924(c) retroactive.[3] Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 (2018) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for*

---

[2] The Court also notes that the BOP began administering COVID-19 vaccines to inmates and staff in January 2021. According to BOP records, approximately 179,796 doses have been administered as of May 24, 2021. Specifically, Fairton FCI (Defendant's facility) has fully inoculated 152 staff members and 513 of 886 inmates.

[3] The Court recognizes that this change must still be considered when evaluating a compassionate release motion. *See McCoy*, 981 F.3d at 284.

10

*the offense has not been imposed as of such date of enactment.*" (emphasis added)).

The Defendant asserts that "today [he] would receive a sentence shorter than the time he has already served." ECF No. 124 at 1. This Court concludes otherwise. It is clear that the Government sought a significant sentence against Defendant. The § 924(c) sentences were a way to accomplish that. In its brief, the Government asserts that Defendant could receive more than 32 years if he were sentenced today. ECF No. 135 at 13-14. The Court has given consideration to a recalculation of the Guidelines pursuant to the current state of the law based on two more realistic scenarios: (1) first, Defendant pleads guilty to two carjackings and the § 924(c) related to the first carjacking, and (2) second, Defendant is convicted of all four counts. Under the first scenario, the Court estimates that Defendant's advisory imprisonment range would have been 272 to 319 months.[4] Under the second scenario, the Court estimates that Defendant's advisory imprisonment range would have been 319 to 356 months.[5] A

---

[4] On Count 1, the Court applied enhancements to § 2B3.1 for abduction, carjacking, stolen guns, obstruction (escape), and reckless endangerment. On Count 3, the Court applied enhancements to § 2B3.1 for a firearm (otherwise used), carjacking, obstruction (escape), and reckless endangerment. After applying the multiple count adjustment in Chapter 3, Part D and denying credit for acceptance of responsibility due to his escapes, the Court arrived at a total offense level of 34. With his criminal history category of III, his Guidelines range for the carjacking counts would be 188 to 235 months. Adding the mandatory 84-month consecutive sentence for the § 924(c) conviction results in the overall range of 272 to 319 months.

[5] On Count 1, the Court applied enhancements to § 2B3.1 for abduction, carjacking, stolen guns, obstruction (escape), and reckless endangerment. On Count 3, the Court applied enhancements to § 2B3.1 for carjacking, obstruction (escape), and reckless endangerment. After applying the multiple count adjustment in Chapter 3, Part D and denying credit for acceptance of responsibility due to his escapes, the Court arrived at a total offense level of 32. With his criminal history category of III, his Guidelines range for the carjacking counts would be 151 to 188 months. Adding the

11

sentence within either of those ranges would be higher than the time he has currently served (even accounting for good time credit), but lower than his current sentence. However, these calculations are based on the minimum sentence on the § 924(c) counts; the maximum is up to Life. With Defendant's prior record and the continued violence in connection with the federal offenses, a minimum sentence would be unlikely. The Court acknowledges that these Guideline calculations may not be precise. But there is limited basis to conclude that a lesser sentence would have been imposed in light of the federal offense conduct and the previously noted state convictions. The Court has given careful and full consideration to this issue and §§ 3553(a)(3)–(6), and concludes that those factors do not weigh in favor of release.

In *McCoy*, the Fourth Circuit indicated that district courts should not grant release based solely on the First Step Act's change to § 924(c), but should instead "conduct individualized inquiries" and consider individual factors specific to the defendant. 981 F.3d at 288. The Court has followed that guidance and has based its decision on the individualized considerations outlined herein.

As to the remaining factors, the Court acknowledges that the record reflects that Defendant has made efforts to rehabilitate while incarcerated. However, that factor, balanced against the factors above, does not warrant release. Defendant committed serious, violent crimes, both the instant offenses and in the past, and he has served approximately 56 percent of his federal sentence. His rehabilitative efforts

---

two mandatory 84-month consecutive sentences for the § 924(c) convictions results in the overall range of 319 to 356 months.

while incarcerated do not outweigh the repetitive violence and contempt for the law that he exhibited before his incarceration. More generally, it is clear that this Defendant is a violent offender, who committed violent crimes on at least three occasions. He served time for his first violent offense, and upon release, committed more violent crimes. The violence exhibited by him, his escape, and the risk imposed when he engaged in a high-speed chase, warrants requiring Defendant to serve the sentence imposed. While the Court acknowledges Defendant's health issues, it ultimately concludes that his release is not warranted after full review of the crimes he committed and consideration of his individual circumstances.

In light of the seriousness and violent nature of the instant offenses, Defendant's criminal history that demonstrates a pattern of repeated violent conduct, and the need for the sentence imposed, the Court finds that the § 3553(a) factors weigh against a release. Accordingly, Defendant's motion, ECF No. 125, is **DENIED**.[6]

**IT IS SO ORDERED.**

                                                     *s/ Terry L. Wooten*
                                                     Terry L. Wooten
                                                     Senior United States District Judge

May 24, 2021
Columbia, South Carolina

---

[6] The Court has given careful and full consideration to the Fourth Circuit's recent per curiam opinion in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), including the concurring opinions, and has applied those standards in considering this motion. It has also reviewed the Fourth Circuit's recent decision in *United States v. High*, 2021 WL 1823280 (4th Cir. May 7, 2021) and has similarly applied those standards.